**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA,** | : | **CR. NO. 3:23-CR-149** |
| **v.** | : | **(JUDGE MANNION)** |
| **NICHOLAS DOMBEK, DAMIEN BOLAND, ALFRED ATSUS, and JOSEPH ATSUS,** | : | |
| | : | |
| **Defendants.** | : | |

**MEMORANDUM**

Presently before the court are Defendants Damien Boland, Alfred Atsus, and Joseph Atsus' motions to sever Defendant Nicholas Dombek's case and trial from theirs, (Doc. 96), and to dismiss Count 1 of the Indictment for failure to state an offense. (Doc. 100). Regarding their motion to sever moving Defendants argue that Defendant Dombek's alleged bad acts are more prevalent and serious than those they allegedly committed and thus they will be substantially prejudiced by a joint trial with him. The government opposes this request on the bases that moving Defendants have failed to show a joint trial will compromise a specific trial right and the court can avoid any prejudice to them from joint trial with a proper limiting instruction to the jury. Regarding their motion to dismiss moving Defendants argue the government's alleged conspiracy in Count 1 of the Indictment is actually an impermissible joinder of multiple conspiracies some of which fall outside the

applicable statute of limitations. The government opposes this motion on the basis that the Indictment properly charges Defendants as members of a single conspiracy that allegedly occurred within the applicable statute of limitations periods. For the reasons discussed below the court agrees with the government as to both motions and will **DENY** them.

## I. Background

On June 6, 2023, a federal grand jury sitting in Scranton, Pennsylvania returned an indictment charging the Defendants with one count of Conspiracy to Commit Theft of Major Artwork, Concealment and Disposal of Major Artwork, and Interstate Transportation of Stolen Property, in violation of 18 U.S.C. §371. Nicholas Dombek was further charged with eight counts of Concealment or Disposal of Major Artwork, in violation of 18 U.S.C. §668 and §2, one count of Theft of Major Artwork, in violation of 18 U.S.C. §668 and §2, and one count of Interstate Transportation of Stolen Property, in violation of 18 U.S.C. §2314 and §2. Damien Boland was further charged with eight counts of Concealment or Disposal of Major Artwork, in violation of 18 U.S.C. §668 and §2, and two counts of Theft of Major Artwork, in violation of 18 U.S.C. §668 and §2. Joseph Atsus was further charged with four counts of Concealment or Disposal of Major Artwork, in violation of 18 U.S.C. §668 and §2, and one count of Theft of Major Artwork, in violation of

18 U.S.C. §668 and §2. Alfred Atsus was further charged with three counts of Concealment or Disposal of Major Artwork, in violation of 18 U.S.C. §668 and §2, and one count of Theft of Major Artwork, in violation of 18 U.S.C. §668 and §2. (Doc. 1).

In Count 1 of the indictment the government specifically alleges that from August 1999 to June 2019 Defendants conspired with Thomas Trotta, Dawn Trotta, Frank Tassiello, Ralph Parry, and Daryl Rinker to steal objects of cultural heritage from museums around the country. During the nearly twenty years the conspiracy allegedly existed the government claims that Defendants and other conspirators conducted research to locate collections containing valuable pieces of artwork, antiques, sports memorabilia, and other items. Defendants and other conspirators would travel to these collections and conduct "reconnaissance" to determine if it was worth stealing a given object. Once a theft was agreed upon and planned, members of the conspiracy, including the moving Defendants, allegedly would meet at pre-arranged locations, travel to the museum or other target of the burglary, break in, smash or destroy the protective display cases, and steal and remove the objects on display. After the stolen objects were taken, members of the conspiracy, including the Defendants, would transport them

- 3 -

back to Northeastern Pennsylvania, where they would itemize, distribute, and break-down the stolen objects between the members of the conspiracy.

Three locations in particular were allegedly utilized for these activities: the residence of Dombek, the residence of conspirator Dawn Trotta, and a bar owned and operated by Boland. At his residence Dombek allegedly stripped stolen items, including Yogi Berra's World Series Rings, of their gemstones and other valuable attachments before melting them down into easily transportable pieces of valuable metal. Dombek also allegedly burned or buried several paintings brought to his home. When he was arrested on related state charges Dombek went to the homes of Boland and conspirators Dawn Trotta and Darlyn Rinker, where he threatened them. He further is alleged to have attempted to buy a fatal amount fentanyl to kill a government witness and had in his possession a poison plant allegedly with the intent to use it for the same purpose. For this Dombek was also charged with witness intimidation.

When the indictment in this case was filed moving Defendants were all timely arraigned and released. However, Dombek fled into the woods of Northeastern Pennsylvania and remained at large until he surrendered on January 1, 2024. After a year of delays, in part caused by Dombek's flight, a joint trial of Dombek and moving Defendants is scheduled to begin on

January 13, 2025. All other conspirators except Darlyn Ricker, who passed away on April 18, 2024, have pled guilty and are now awaiting sentence.

## II. Legal Standards

### A. Motions to Sever

Under Federal Rule of Criminal Procedure 8(b), defendants may properly be joined in a single indictment "if they are alleged to have participated in the same act or transactions or the same series of acts or transactions." Fed. R. Crim. P. 8(b). However, [i]f joinder is improper under Rule 8, "the Court must order separate trials." *United States v. Johnson*, 2022 WL 2657113, at *2 (M.D. Pa. July 8, 2022) (citing *United States v. Walker*, 657 F.3d 160, 170 (3d Cir. 2011)) ("Rule 8 requires severance where defendants were improperly joined."). Even if defendants are properly joined under Rule 8, "the Court may sever defendants or offenses under Rule 14 '[i]f it appears that a defendant or the government is prejudiced by a joinder of offenses or of defendants in an indictment or information or by such joinder for trial together.'" *Id.* at 3 (citing Fed. R. Crim. P. 14). Further, "a district court should grant a severance under Rule 14 only if there is a serious risk that a joint trial would compromise a specific trial right of one of the defendants or prevent the jury from making a reliable judgment about guilt or innocence." *Id.* (quoting *Zafiro v. United States*, 506 U.S. 534, 539 (1993)).

Thus, there is a "heavy" burden on the defendant to show "clear and substantial prejudice resulting in a manifestly unfair trial." *Id.* (quoting *United States v. Eufrasio*, 935 F.2d 553, 568 (3d Cir. 1991)). Additionally, "[e]ven when the risk of prejudice is high, less drastic measures than severance (such as limiting instructions) 'often will suffice to cure any risk of prejudice.'" *Id.* (quoting *Zafiro*, 506 U.S. at 539). As such, "the appropriate question for the Court on a motion under Rule 14 is whether the jury can 'reasonably be expected to compartmentalize the evidence as it relates to the separate defendants in view of its volume and limited admissibility.'" *Id.* (quoting *United States v. Serubo*, 460 F. Supp. 689, 694 (E.D. Pa. 1978)); *see also United States v. Jones*, 2016 WL 3067010, *26 (W.D. Pa. June 1, 2016) ("Rule 14 provides the court discretion to order separate trials of counts, sever the defendants' trials, or provide any other relief that justice requires, if joinder of offenses appears to prejudice either the defendant or the government.") (citations omitted).

## B. **Motions to Dismiss**

Federal Rule of Criminal Procedure 7 provides that an indictment "must be a plain, concise, and definite written statement of the essential facts constituting the offense charge." Fed. R. Crim. P. 7(c)(1). An indictment is sufficient if it "(1) contains the elements of the offense intended to be charged, (2) sufficiently apprises the defendant of what he must be prepared to meet, and (3) allows the defendant to show with accuracy to what extent he may plead a former acquittal or conviction in the event of a subsequent prosecution." *United States v. Vitillo*, 490 F.3d 314, 320 (3d Cir. 2007) (internal quotation marks omitted). In other words, "no greater specificity than the statutory language is required so long as there is sufficient factual orientation to permit the defendant to prepare his defense and to invoke double jeopardy in the event of a subsequent prosecution." *United States v. Rankin*, 870 F.2d 109, 112 (3d Cir. 1989).

"Generally, an indictment will satisfy these requirements where it informs the defendant of the statute he is charged with violating, lists the elements of a violation under the statute, and specifies the time period during which the violations occurred." *United States v. Huet*, 665 F.3d 588, 595 (3d Cir. 2012). A court should uphold an indictment "unless it is so defective that it does not, by any reasonable construction, charge an offense." *United*

*States v. Willis*, 844 F.3d 155, 161 (3d Cir. 2016) (internal quotation marks omitted). Additionally, "[i]n considering a defense motion to dismiss an indictment, the district court [must] accept[ ] as true the factual allegations set forth in the indictment." *United States v. Bergrin*, 650 F.3d 257, 265 (3d Cir. 2011) (citation omitted). "If the allegations in the indictment do not suffice to state an offense, Rule 12(b)(3)(B) authorizes dismissal; however, "dismissal[ ] may not be predicated upon the insufficiency of the evidence to prove the indictment's charges." *United States v. Manganas*, 2017 WL 2547310, *2 (M.D. Pa. June 13, 2017) (citing *United States v. DeLaurentis*, 230 F.3d 659, 660-61 (3d Cir. 2000) ("Unless there is a stipulated record, or unless immunity issues are implicated, a pretrial motion to dismiss an indictment is not a permissible vehicle for addressing the sufficiency of the government's evidence.")).

## III. Discussion

### A. Defendants' Motion to Dismiss Count 1

Moving Defendants argue that Count 1 of the Indictment improperly joins multiple distinct conspiracies as a single conspiracy in violation of Federal Rule of Criminal Procedure 8(b). According to the moving Defendants there are significant time gaps between the acts alleged in the indictment. For example, they highlight a 6-year time gap between the theft

of Christy Matthewson's jersey from Keystone College, the first alleged overt act of the conspiracy, and the next alleged act. Additionally, they claim the government's alleged conspiracy can be divided into at least three other distinct time periods that represent, at that least, three separate conspiracies. First are the burglaries of the Everhart Museum and Space Farms Zoo & Museum in November 2005 and June 2006 respectively. Second are the burglaries of the Lackawanna Historical Society, Scranton Country Club, Ringwood Manor, and Sterling Hill Mining Museum between July 2010 and July 2011. Third is the theft of sports memorabilia from the USGA Golf Museum and Library in May 2012, the National Racing Museum, and Yogi Berra Museum and Learning Center both in October 2014. Furthermore, between July 2016 and April 2019 the government's allegations make no mention of Boland. They also make no mention of Alfred Atsus after December 2012 or Joseph Atsus after October 2014.

Based on these distinctions moving Defendants assert that the Indictment includes acts beyond the applicable 5 year statute of limitations period and to the extent the Indictment includes conduct that occurred prior to June 6, 2018, it must be dismissed. Moving Defendants further claim that the mere fact the conspiracy, or in their view multiple conspiracies, were kept

secret does not allow the government to argue the statute of limitation is tolled for each of those conspiracies.

In response the Government contends that paragraphs 6 through 15 of Count 1 sufficiently allege a common purpose of a conspiracy, "to steal from the care, custody, and control of various museums certain objects of cultural heritage; knowing that certain objects of cultural heritage had been stolen...received, concealed, exhibited, or disposed of the objects, and transported in interstate or foreign commerce goods, wares, merchandise, securities or money, of the value of $5,000 or more, knowing the same to have been stolen, converted, or taken by fraud..." (Doc. 1, ¶6). Specifically, the indictment alleges that the Defendants and other conspirators used nearly identical methods to conduct each theft as well as transport, conceal, and dispose of the stolen items.

Likewise, the Indictment alleges extensive overlap of participants in Count 1. Dombek and Boland are involved, in some way, with nearly every alleged theft. Joseph Atsus is alleged to have actively participated in the burglaries of Keystone College, the Everhart Museum, Space Farms Zoo & Museum, Ringwood Manor, Scranton Country Club, Sterling Hill Mining, Museum, and the Yogi Berra Museum & Learning Center. Joseph Atsus is also alleged to still be actively concealing the items stolen from the Everhart

Museum, Space Farms Zoo & Museum, and Ringwood Manor. Alfred Atsus, while not alleged to have been an active participant in as many thefts as the other defendants, is still alleged to be actively concealing the artwork and other objects of cultural heritage stolen from the Everhart Museum, Space Farms Zoo & Museum, and Ringwood Manor.

Regarding the moving Defendants' assertion that the multiple and sometimes years long delays between the overt acts listed in Count 1 bespeak multiple distinct conspires, the government counters that the detailed targeting, planning, and execution of each museum burglary *required* delays between each act. During the time between overt acts the conspirators did not take a break from their criminal activity but instead continuously worked towards committing their next crime. Similarly, regarding the moving Defendants assertion that Count 1 is at least, in part, barred by the applicable statute of limitation, the government retorts that one of the common goals of the conspiracy, namely the continued concealment of the stolen objects of cultural heritage, is a continuing crime. The time gaps between thefts do not indicate the end of a conspiracy if one of the goals of that conspiracy is to continue to conceal the items stolen in previous thefts. Instead, the alleged ongoing concealment of stolen items indicates that the

charged conspiracy continued uninterrupted between each theft, and was one, continuous, criminal agreement.

On all these issues the court agrees with the government. To prove a conspiracy against the United States in the Third Circuit, the government must prove that:

> 1) two or more persons agreed to commit an offense against the United States, as charged in the indictment;
>
> 2) the defendant was a party to or member of that agreement;
>
> 3) the defendant joined the agreement or conspiracy knowing of its objectives to commit an offense against the United States and intending to join together with at least one other alleged conspirator to achieve those objectives; that is, that the defendant and at least one other alleged conspirator shared a unity of purpose and the intent to achieve a common goal or objective, to commit an offense against the United States; and
>
> 4) at some time during the existence of the agreement or conspiracy, at least one of its members performed an overt act in order to further the objectives of the agreement.

*See* Third Circuit Criminal Jury Instruction. §6.18.371A. Additionally conspirators need not have knowledge of all other members of a conspiracy, nor of all of their activities in support of the conspiracy. 3d Cir. Model Criminal Jury Instructions 6.18.371D ("The government need not prove that (name) knew everything about the conspiracy or that (he) (she) knew everyone involved in it, or that (he) (she) was a member from the beginning."); *see also United States v. Lester*, 282 F.2d 750, 753 (3d Cir. 1960) (single conspiracy

- 12 -

to transport stolen property in interstate commerce "committed whether or not the parties comprehend its entire scope, whether they act separately or together, by the same or different means, known or unknown to some of them.")

Moreover, the question of whether a single conspiracy or multiple conspiracy exists is a fact question to be decided by a jury. *Smith*, 789 F.2d at 200. The only consideration in a Rule 12 motion to dismiss is whether the allegations in the Indictment, taken as true, sufficiently allege a single, timely indictment. *See Huet*, 665 F.3d 588, 595-596. To extent there is any variance at trial between the indictment and evidence the Third Circuit has identified three factors to determine if a single conspiracy existed: "overlap of participants, identity of purpose, and identity of method." *United States v. Schurr*, 775 F.2d 549 (3d Cir. 1985) (citing *United States v. Maker*, 751 F.2d, 614, 625-626) (3d Cir. 1984). Even though the court need not apply these factors at this stage of the proceeding, it notes that government has so far sufficiently alleged overlap of participants with a shared purpose and method to conspire to steal, transport, conceal, and dispose of items of cultural heritage. Time gaps between overt acts alone do not preclude the existence of a conspiracy.

The fact that the indictment does not mention moving Defendants with regards to new burglaries between or after certain dates also does not mean they were no longer part of the conspiracy. Once the prosecution has proved both the existence of a conspiracy across a period of time and the defendant's participation in that conspiracy, the burden falls on the defendant to establish his withdrawal prior to the completion of the period. *United States v. Williams*, 974 F.3d 320, 368 (3d Cir. 2020) (citing *Smith*, 568 U.S. at 113). If a defendant does not show "some [affirmative] act to disavow or defeat the purpose" of the conspiracy, then he must "incur the guilt" attendant upon its continuance. *Id.* (citing *Hyde v. United States*, 225 U.S. 347, 369-70 (1912) (overruled on other grounds.) Here moving Defendants point to no such affirmative acts. To the contrary the indictment alleges that irrespective of their participation in new burglaries, moving Defendants still contributed to the conspiracy by continuing to conceal the items stolen in prior burglaries. This continued concealment is also why moving Defendants statute of limitations argument fails.

Moving Defendants are correct that there is five-year statute of limitation to charge conspiracy under 18 U.S.C. §371 that runs from the last, not the first, overt act alleged. 18 U.S.C. §3282; *see also Fiswick v. United States*, 329 U.S. 211, 216 (1946); *United States v. Gordon*, 335 Fed. App'x.

236, 238-239 (3d Cir. 2009). However, two of the substantive offenses Defendants are charged with conspiring to commit have a twenty-five-year statute of limitation. 18 U.S.C. §3294. In any event, since the indictment here was filed on June 6, 2023, the indictment must otherwise allege that at least one overt act occurred after June 6, 2018. *See United States v. Reitmeyer*, 356 F.3d 1313 (3rd Cir. 2004) (limitations period begins when the crime is complete, not when it is discovered.); *see also Grunewald v. United States*, 353 U.S. 391, 396–97 (1957) (where substantiation of a conspiracy charge requires proof of an overt act, it must be shown both that the conspiracy still subsisted within the three years prior to the return of the indictment, and that at least one overt act in furtherance of the conspiratorial agreement was performed within that period.) Here the government has alleged twenty-two overt acts, which occurred after June 6, 2018.

The Indictment further alleges five overt acts that began prior to that date but continued after it, namely the ongoing concealment of stolen property from Keystone College, Everhart Museum, and Space Farms Zoo & Museum. As previously referenced the continued concealment of the stolen objects is a continuing crime because that offense requires the continuing actions of the concealing party, namely controlling, transporting, and otherwise securing the stolen items. *See United States v. United States*

*Gypsum Co.*, 600 F.2d, 414, 417 (3d Cir. 1979). Such acts of concealment are alleged to be part of the original conspiracy charged here and differ from acts of concealment taken merely to hide the existence of an already completed plot that cannot be used to extend a statute of limitations. Thus, the statute of limitations would not begin to run here until the alleged concealment of stolen items is complete, *i.e.*, the item is discovered or destroyed. As the Indictment alleges that some of the moving Defendants have continued to conceal some of the stolen objects of cultural heritage through the present Count 1 of the Indictment is timely.

Accordingly Count 1 of the Indictment properly charges Defendants as members of single conspiracy within the applicable statute of limitations periods, and moving Defendants motion to dismiss that count will be **DENIED**.

### B. Defendants' Motion to Sever Defendant Dombek

Moving Defendants argue that trying them alongside Defendant Dombek would create a serious risk that the jury will not be able to make a reliable judgment about their guilt or innocence. Given the complexity of this case moving Defendants argue the risk for jury confusion is high. Since the government may seek to present evidence of Dombek's misconduct at a joint trial that would otherwise be inadmissible against them they assert the jury

could also accidently attribute Dombek's bad acts to them. Specifically, they note concerns about Dombek's decades of other crimes preceding the conspiracy alleged here as well as burglaries Dombek allegedly committed with other conspirators, namely Thomas Trotta, but not moving Defendants. In the same vein moving Defendants assert a jury in a joint trial may wrongly attribute Dombek's "near-familiar relationship" with Trotta to them.

Moving Defendants further assert that allegations against Dombek are "inflammatory and qualitative different" from the evidence against them because they involve the destruction of historic cultural artifacts like Yogi Berra's World Series Rings and witness intimidation including alleged attempts to poison a government witness. Moreover, when arrest warrants issued in this case moving Defendants were promptly arraigned and released, while Dombek went into hiding. Moving Defendants claim that such allegations may lead the government to seek a consciousness of guilt jury instruction against Dombek that would not be appropriate in their cases. As such, moving Defendants claim that a joint trial will substantially prejudice their defenses and severance of their cases from Dombek is necessary.

In response the government asserts that allegations one defendant in a conspiracy was more culpable or participated in conduct which was more severe or violent that other conspirators, does not meet the high burden

required for severance. According to the government the allegations against only Dombek are also intrinsic to the crimes charged against all Defendants. Namely Dombek is alleged to have threatened violence against his co-conspirators in order to protect himself and prevent the discovery of the conspiracy. As such, the evidence against Dombek is relevant to prove the existence of the conspiracy, and would still be admissible in moving Defendants' trial, even if severed from Dombek. Likewise, Dombek's flight to avoid arrest and close relationship with Trotta could also be admissible against moving Defendants in any severed trial because they are also relevant to the existence of the conspiracy. The government further notes that regardless, moving Defendants had a close relationship with Trotta having allegedly participated in a criminal conspiracy with him for nearly twenty years. To the extent there is still any potential for spillover evidence in a joint trial the government claims that evidence can be properly mitigated by the court with an instruction to the jury to consider each defendant and each charge separately.

The court again agrees with the government. The mere fact the Dombek is accused of more evocative conduct does violate moving Defendants' specific trial rights or prevent a jury from making a reliable judgment about their guilt or innocence. *See United States v. McGlory*, 968

F.2d 309, 340 (3d Cir. 1992) (citing *United States v. DePeri*, 778 F.2d 963, 983 (3d Cir. 1985); ("The introduction of evidence more damaging to one defendant than another does not entitle the seemingly less culpable defendant to a severance."); *see also United States v. Heilman*, 377 Fed. App'x. 157, 200 (3d Cir. 2010) (severance not warranted in a drug trafficking case where one defendant also was accused of violent conduct); *United States v. Davis*, 39 F.3d 173, 183 (3d. 2005) (severance denied where evidence was stronger against co-defendants, including evidence of co-defendant fleeing from police); *United States v. Somers*, 496 F.2d 723, 730 (3d Cir. 1974) (severance denied although evidence against co-defendants was "much more substantial"). Thus, the moving Defendants have not carried their heavy burden of showing clear and substantial prejudice from a joint trial.

Additionally, the Third Circuit has long expressed a preference for joint trials whereas here defendants are charged with conspiracy. *See United States v. Ward*, 793 F.2d 551, 556 (3d Cir. 1986) (participants in a single conspiracy should ordinarily be tried together for purposes of judicial efficiency and consistency, even if evidence against one is more damaging than that against another.); *see also United States v. Lore*, 430 F.3d 190, 205 (430 F. 3d 190) ("We have long held that a defendant is not entitled to a

severance merely because evidence against a co-defendant is more damaging than the evidence against the moving party." (citation and quotation marks omitted). In cases where defendants are alleged to have participated in a single conspiracy, a joint trial on both the conspiracy and related counts "aid[s] the finder of fact in determining the full extent of the conspiracy and prevent[s] the tactical disadvantage to the government from disclosure of its case." *United States v. Voigt*, 89 F.3d 1050, 1094 (3d Cir. 1996); *see also United States v. Green*, 2024 WL 3945118 *4 (3d Cir., August 27, 2024) ("Our default procedure is thus to conduct a joint trial of defendants who are indicted together ..."). Additionally, the Government alone has proffered that this case will involve between 45-90 witnesses, all of who would have to be recalled in a severed trial. It is clear that severance would not further judicial efficiency or consistency. Given that moving Defendants have not shown a clear and substantial prejudice making a joint trial manifestly unfair, the court sees no reason to diverge from this default procedure here.

The government is also correct that the court can mitigate any prejudice caused by a joint trial with a proper limiting instruction rather than granting the more extreme remedy of severance. *See* Third Circuit Model Criminal Instructions 3.12 through 3.15; *Lore*, 430 F.3d at 206 (jury

instructions are persuasive evidence against prejudice); *see also United States v. Brown*, 849 F.3d 87, 92 (3d Cir. 2017) (citing *Zafiro*, 506 U.S. at 538–39, (1993) (citation omitted) ("Rule 14 does not require severance even if prejudice is shown; rather, it leaves the tailoring of the relief to be granted, if any, to the district court's sound discretion."); *Richardson v. Marsh*, 481 U.S. 200, 211, (1987) (When the risk of prejudice is high, a district court is more likely to determine that separate trials are necessary, but less drastic measures, such as limiting instructions, often will suffice to cure any risk of prejudice.). A limiting instruction here will address the moving Defendants' concerns without undermining judicial economy or placing the government at tactical disadvantage. Accordingly, moving Defendants' motion to sever will be **DENIED**.

### IV. Conclusion

Based on the foregoing, the court will **DENY** moving Defendant's motions to sever and dismiss. (Docs. 96 and 100). An appropriate order follows.

**MALACHY E. MANNION**
**United States District Judge**

**DATE: October 10, 2024**
23-149-02

- 21 -