UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | : | CR. NO. 3:23-CR-149 |
| v. | : | (JUDGE MANNION) |
| NICHOLAS DOMBEK, DAMIEN BOLAND, ALFRED ATSUS, and JOSEPH ATSUS, | : : | |
| Defendants. | : | |

## MEMORANDUM

Presently before the court are Defendants Damien Boland, Alfred Atsus, and Joseph Atsus' joint motion *in limine* to exclude evidence of a firearm recovered from Defendant Boland's aunt ("Joint Motion"). (Doc. 104). Regarding their motion to exclude moving Defendants argue that the firearm recovered from Defendant Boland's aunt's house is unrelated to the case and should be barred from evidence at trial as unfairly prejudicial pursuant to Federal Rules of Evidence 402 and 403. (*See generally*, Doc. 105). The government opposes this request arguing, *inter alia*, that the recovered firearm is highly probative of Defendant Boland's alleged involvement in the 2006 burglary of the Space Farms Zoo and Museum ("Space Farms"), which the government anticipates establishing at trial. (*See generally*, Doc. 145). For the reasons discussed below, the court will **DENY** the Joint Motion.

I. **Background**

On June 6, 2023, a federal grand jury sitting in Scranton, Pennsylvania returned an indictment charging the Defendants with one count of Conspiracy to Commit Theft of Major Artwork, Concealment and Disposal of Major Artwork, and Interstate Transportation of Stolen Property, in violation of 18 U.S.C. §371. Nicholas Dombek was further charged with eight counts of Concealment or Disposal of Major Artwork, in violation of 18 U.S.C. §668 and §2, one count of Theft of Major Artwork, in violation of 18 U.S.C. §668 and §2, and one count of Interstate Transportation of Stolen Property, in violation of 18 U.S.C. §2314 and §2. Damien Boland was further charged with eight counts of Concealment or Disposal of Major Artwork, in violation of 18 U.S.C. §668 and §2, and two counts of Theft of Major Artwork, in violation of 18 U.S.C. §668 and §2. Joseph Atsus was further charged with four counts of Concealment or Disposal of Major Artwork, in violation of 18 U.S.C. §668 and §2, and one count of Theft of Major Artwork, in violation of 18 U.S.C. §668 and §2. Alfred Atsus was further charged with three counts of Concealment or Disposal of Major Artwork, in violation of 18 U.S.C. §668 and §2, and one count of Theft of Major Artwork, in violation of 18 U.S.C. §668 and §2. (Doc. 1).

In Count 1 of the indictment the government specifically alleges that from August 1999 to June 2019 Defendants conspired with Thomas Trotta, Dawn Trotta, Frank Tassiello, Ralph Parry, and Daryl Rinker to steal objects of cultural heritage from museums around the country. During the nearly twenty years the conspiracy allegedly existed the government claims that Defendants and other conspirators conducted research to locate collections containing valuable pieces of artwork, antiques, sports memorabilia, and other items. Defendants and other conspirators would travel to these collections and conduct "reconnaissance" to determine if it was worth stealing a given object. Once a theft was agreed upon and planned, members of the conspiracy, including the moving Defendants, allegedly would meet at pre-arranged locations, travel to the museum or other target of the burglary, break in, smash or destroy the protective display cases, and steal and remove the objects on display. After the stolen objects were taken, members of the conspiracy, including the Defendants, would transport them back to Northeastern Pennsylvania, where they would itemize, distribute, and break-down the stolen objects between the members of the conspiracy.

Three locations in particular were allegedly utilized for these activities: the residence of Dombek, the residence of conspirator Dawn Trotta, and a bar owned and operated by Boland. At his residence Dombek allegedly

stripped stolen items, including Yogi Berra's World Series Rings, of their gemstones and other valuable attachments before melting them down into easily transportable pieces of valuable metal. Dombek also allegedly burned or buried several paintings brought to his home. When he was arrested on related state charges Dombek went to the homes of Boland and conspirators Dawn Trotta and Darlyn Rinker, where he threatened them. He further is alleged to have attempted to buy a fatal amount of fentanyl to kill a government witness and had in his possession a poison plant allegedly with the intent to use it for the same purpose. For this Dombek was also charged with witness intimidation.

When the indictment in this case was filed moving Defendants were all timely arraigned and released. However, Dombek fled into the woods of Northeastern Pennsylvania and remained at large until he surrendered on January 1, 2024. After a year of delays, in part caused by Dombek's flight, a joint trial of Dombek and moving Defendants is scheduled to begin on January 13, 2025. All other conspirators except Darlyn Ricker, who passed away on April 18, 2024, have pled guilty and are now awaiting sentence.

Following the publicity surrounding the unsealing of the Indictment, Defendant Boland's aunt, Donna De La Vina, through counsel, contacted the Federal Bureau of Investigation (FBI) regarding a firearm Defendant Boland

left at her residence years prior. De La Vina discovered the firearm in storage and feared that it might be stolen or have some connection to the Indictment in this case. Specifically, on June 28, 2006, the Space Farms Zoo and Museum, located in Wantage, New Jersey, was burglarized and multiple valuable firearms were stolen. One of the stolen firearms was a Colt Dragoon Revolver, allegedly the same type of gun discovered by De La Vina. Trotta admitted to participating in this burglary with Defendant Boland and other members of the conspiracy. The Government alleges that Defendant Boland travelled to visit his aunt in 2009 at her residence in Las Vegas, Nevada, following the death of her husband, where Defendant Boland remained for approximately a month and then left, leaving the Colt Dragoon Revolver behind.

The factual allegations pertaining to this firearm are in opposition. On the one hand, moving Defendants allege that the authenticity, condition and value of the Space Farms stolen guns are unknown because they were not insured or appraised. On the other hand, the Government alleges, *inter alia*, that the owner of the Space Farms, Parker Space, personally viewed the Colt Revolve discovered by De La Vina and informed Government agents that it appears to be the Colt Dragoon revolver stolen from the museum. Furthermore, the Government alleges that experts have examined the

firearm and one of them, Leon Castner, has opined that it was an authentic Colt Dragoon 6 shot Percussion Army Revolver, produced from 1851 to 1861, valued at $22,000, and described as "unique and very rare" given its fine engraving. Moving Defendants counter that it is not the same firearm because that particular expert documented a serial number (231195A) that was different from the firearm's actual serial number (15609). In response, the Government explains that the particular serial number moving Defendants allude to is merely the result of the owner's conjecture, who did not have records at his museum indicating the exact serial numbers for some of the stolen firearms, and the expert's, Leon Castner, email where by Castner opined that "one of the stolen ones *might have been* #373, Colt Single Action Army 45 Cal with Mexican Silver & 18K Gold Grips, S/n 233195A." (Doc. 177, p. 5) (emphasis in original). Other than the serial number disagreement, moving Defendants also challenge the expert report provided by the Government for, among other things, depending on speculation.

Against this backdrop, the Court considers the Joint Motion to decide whether to allow the admission of the firearm and related testimony at trial.

## II. Discussion

### A. Motion *In Limine* Guidelines

The Court is vested with broad inherent authority to manage its cases, which carries with it the discretion and authority to rule on motions *in limine* prior to trial. *See Luce v. United States*, 469 U.S. 38, 41 n.4 (1984); *In re Japanese Elec. Prods. Antitrust Litig.*, 723 F.2d 238, 260 (3d Cir. 1983), rev'd on other grounds sub nom., *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574 (1986) (the court exercises its discretion to rule *in limine* on evidentiary issues "in appropriate cases"). Courts may exercise this discretion in order to ensure that juries are not exposed to unfairly prejudicial, confusing or irrelevant evidence. *United States v. Romano*, 849 F.2d 812, 815 (3d Cir. 1988). Courts may also do so in order to "narrow the evidentiary issues for trial and to eliminate unnecessary trial interruptions." *Bradley v. Pittsburgh Bd. of Educ.*, 913 F.2d 1064, 1069 (3d Cir. 1990) (citation omitted). However, courts should be careful before doing so.

In considering motions *in limine* which call upon the Court to engage in preliminary evidentiary rulings under Rule 403 of the Federal Rules of Evidence, we begin by recognizing that these "evidentiary rulings [on motions *in limine*] are subject to the trial judge's discretion and are therefore reviewed only for abuse of discretion.... Additionally, application of the

balancing test under Federal Rule of Evidence 403 will not be disturbed unless it is 'arbitrary and irrational.'" *Abrams v. Lightolier Inc.*, 50 F.3d 1204, 1213 (3d Cir. 1995) (citations omitted); *see Bernardsville Bd. of Educ. v. J.H.*, 42 F.3d 149, 161 (3d Cir. 1994) (reviewing *in limine* rulings for abuse of discretion). Yet, while these decisions regarding the exclusion of evidence rest in the sound discretion of the district court and will not be disturbed absent an abuse of that discretion, the exercise of that discretion is guided by certain basic principles.

One of the key guiding principles is reflected in the philosophy which shapes the rules of evidence. The Federal Rules of Evidence can aptly be characterized as evidentiary rules of inclusion, which are designed to broadly permit factfinders to consider pertinent factual information while searching for the truth. The inclusionary quality of the rules, and their permissive attitude towards the admission of evidence, is embodied in three cardinal concepts. The first of these concepts is Rule 401's definition of relevant evidence. Rule 401 defines what is relevant in an expansive fashion, stating, "relevant evidence" means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence. Fed. R. Evid. 401. Adopting this broad view of relevance it has been held that:

"Under [Rule] 401, evidence is relevant if it has 'any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence.' [Therefore] '[i]t follows that evidence is irrelevant only when it has no tendency to prove the fact. Thus the rule, while giving judges great freedom to admit evidence, diminishes substantially their authority to exclude evidence as irrelevant.'"

*Frank v. County of Hudson*, 924 F. Supp. 620, 626 (D.N.J. 1996) (citing *Spain v. Gallegos*, 26 F.3d 439, 452 (3d Cir. 1994) (quotations omitted)).

This quality of inclusion embraced by the Federal Rules of Evidence, favoring the admission of potentially probative proof in all of its forms, is further buttressed by Rule 402, which generally defines the admissibility of relevant evidence in sweeping terms, providing that, "[a]ll relevant evidence is admissible, except as otherwise provided by the Constitution of the United States, by Act of Congress, by these rules, or by other rules prescribed by the Supreme Court pursuant to statutory authority. Evidence which is not relevant is not admissible. Fed. R. Evid. 402.

Thus, Rule 402 expressly provides that all "[r]elevant evidence will be admissible unless the rules of evidence provide to the contrary." *United States v. Sriyuth*, 98 F.3d 739, 745 (3d Cir. 1996) (citations omitted). While these principles favoring inclusion of evidence are subject to some

reasonable limitations, even those limitations are cast in terms that clearly favor admission of relevant evidence over preclusion of proof in federal proceedings. Thus, Rule 403, which provides grounds for exclusion of some evidence, describes these grounds for exclusion as an exception to the general rule favoring admission of relevant evidence, stating that:

> Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence.

Fed. R. Evid. 403 (emphasis added).

By permitting the exclusion of relevant evidence only when its probative value is "substantially outweighed" by other prejudicial factors, Rule 403 underscores the principle that, while evidentiary rulings rest in the sound discretion of the court, that discretion should consistently be exercised in a fashion which resolves all doubts in favor of the admission of relevant proof in a proceeding, unless the relevance of that proof is substantially outweighed by some other factors which caution against admission.

These broad principles favoring the admission of relevant evidence also shape and define the scope of this Court's discretion in addressing motions *in limine* like the Joint Motion here, which seeks a pre-trial ruling

excluding a firearm largely on relevance and prejudice grounds. In the past, the United States Court of Appeals for the Third Circuit has cautioned against such preliminary and wholesale exclusion of evidence, noting that it has "made clear that rulings excluding evidence on Rule 403 grounds should rarely be made *in limine*." *Walden v. Georgia–Pacific Corp.*, 126 F.3d 506, 518 n. 10 (3d Cir. 1997). The reason for this caution is evident: oftentimes a court "cannot fairly ascertain the potential relevance of evidence for Rule 403 purposes until it has a full record relevant to the putatively objectionable evidence." *Id.*; *see also In re Diet Drugs Products Liability Litigation*, 369 F.3d 293, 314 (3d Cir. 2004). As the Court of Appeals has observed when advising against excessive reliance on motions *in limine* to exclude evidence under Rule 403:

> [M]otions *in limine* often present issues for which final decision is best reserved for a specific trial situation. *American Home*, 753 F.2d at 324; *cf. Luce v. United States*, 469 U.S. 38, 41–42, 105 S. Ct. 460, 463–64, 83 L.Ed.2d 443 (1984) (holding that criminal defendant must testify to preserve claim of improper impeachment with prior conviction) ("The [*in limine*] ruling is subject to change when the case unfolds, particularly if the actual testimony differs from what was contained in the defendant's proffer. Indeed even if nothing unexpected happens at trial, the district judge is free, in the exercise of sound judicial discretion, to alter a previous *in limine* ruling."). This is particularly true when

the evidence is challenged as irrelevant or prejudicial; the considerations weighed by the court will likely change as the trial progresses. *See Rosenfeld v. Basquiat*, 78 F.3d 84, 91 (2d Cir. 1996) ("Unlike rulings that involve balancing potential prejudice against probative value, the ruling in the present case was not fact-bound and no real purpose other than form would have been served by a later objection."). We have also made clear that rulings excluding evidence on Rule 403 grounds should rarely be made *in limine*. "[A] court cannot fairly ascertain the potential relevance of evidence for Rule 403 purposes until it has a full record relevant to the putatively objectionable evidence. We believe that Rule 403 is a trial-oriented rule. Precipitous Rule 403 determinations, before the challenging party has had an opportunity to develop the record, are therefore unfair and improper." *Paoli I*, 916 F.2d at 859; *see also In re Paoli R.R. Yard PCB Litig.*, 35 F.3d 717, 747 (3d Cir. 1994) ("*Paoli II*"). Under these and similar circumstances, if a district court makes a tentative pre-trial ruling, it has the opportunity to "reconsider [its] in limine ruling with the benefit of having been witness to the unfolding events at trial." *United States v. Graves*, 5 F.3d 1546, 1552 (5th Cir. 1993).

*Walden*, 126 F.3d at 518 n. 10.

The Third Circuit has thus cautioned that "pretrial Rule 403 exclusions should rarely be granted.... Excluding evidence as being more prejudicial than probative at the pretrial stage is an extreme measure that is rarely

necessary, because no harm is done by admitting it at that stage." *In re Paoli R. Yard PCB Litig.*, 916 F.2d 829, 859 (3d Cir. 1990); *see also Spain v. Gallegos*, 26 F.3d 439, 453 (3d Cir. 1994) (noting that the Third Circuit's "cautious approach to Rule 403 exclusions at the pretrial stage...."). Moreover, the Third Circuit has characterized Rule 403 as a "trial-oriented rule" such that "[p]recipitous Rule 403 determinations, before the challenging party has had an opportunity to develop the record, are ... unfair and improper." *In re Paoli R. Yard PCB Litig.*, 916 F.2d at 859.

Accordingly, these principles urge courts to exercise their broad discretion sparingly in this field and avoid precipitous pre-trial rulings excluding evidence on relevance and prejudice grounds or otherwise unduly curtailing the parties' presentations of their case. It is against the backdrop of these guiding legal tenets that this Court considers the moving Defendants' motion in *limine*.

### B. Analysis

As previewed in the background above, the parties disagree as to whether the recovered firearm is the same as the firearm stolen from Space Farms in 2006. The parties have presented diverging factual allegations in support of their arguments.

The crux of moving Defendants' argument is that the firearm should not be admitted into evidence at trial because the Government relies on challengeable testimony and evidence based on speculation. For example, moving Defendants point to a discrepancy between the serial numbers documented by the Government expert, Leon Castner, and the numbers found on the recovered firearm. Moving Defendants also argue that the Government's expert assumes the recovered firearm is authentic based on the owner's, Parker Space, opinion that it "*may be* the same gun stolen in 2006." (Doc. 154, p. 2) (emphasis in original). Under these circumstances, moving Defendants argue that allowing testimony concerning the recovered firearm would be substantially more prejudicial than probative, in violation of F.R.E. 403. (*Id.*, p. 3).

The Government responds that the identification of the recovered revolver as the stolen property is not based upon speculation, but strong circumstantial evidence, and that moving Defendants' factual allegations are misleading, namely that the stolen firearm in question, an 1861 Colt Dragoon .44 caliber 6-shot percussion revolver, had a different serial number than the same model revolver recovered from Defendant Boland's aunt's home in 2023. (Doc. 177, pp. 1-2). The Government argues that moving Defendants' claim is "based upon misinterpretation and misunderstanding of a 2006

NCIC entry made by the New Jersey State Police." (*Id.*, p. 2). In specific, the serial number discrepancy originates in an email where the expert, Leon Castner, merely opined that the recovered firearm "*might have been #373, Colt Single Action Army 45 Cal with Mexican Silver & 18K Gold Grips-s/n#233195A.*" (*Id.*, p. 5) (emphasis in original). This email, the Government argues, demonstrated that the owner, Parker Space, did not know or have any records indicating the serial number of the stolen Dragoon Revolver, and due to the owner's ignorance, "Trooper Crane, trying to identify additional information about the stolen firearms, placed that serial number, guessed at by Mr. Castner, into NCIC. It is Trooper's Crane handwriting on the email chain, not Mr. Castner's nor Parker Space's[, the owner]." (*Id.*). Herein is the Government explanation endeavoring to clarify the serial number discrepancy. Furthermore, the Government asserts that it is prepared to offer witness testimony of the firearm's owner and alleged co-conspirator Trotta identifying the two firearms as the same, as well as expert testimony explaining the similarities between the two firearms' grip and engraving.

The Court finds the evidence the Government is prepared to present at trial to be sufficiently relevant and probative to be admitted. The moving Defendants' argument, of whether the witnesses can definitively testify that the firearms are the same, goes to the weight of the evidence, not its

admissibility. Now, whether such admission would create a danger of confusion or mislead a jury, the Court finds such danger to be relatively low. "[P]retrial Rule 403 exclusions should rarely be granted" and the Court will not do so here. *In re Paoli R. Yard PCB Litig.*, 916 F.2d at 859. The parties have worked diligently to present their divergent understanding of the evidence and they will be provided the opportunity to do so again at trial. The jury will be permitted to consider all the evidence and decide for themselves whether the two firearms are the same.

### IV. Conclusion

Based on the foregoing, the court will **DENY** moving Defendants' motion *in limine* to exclude evidence of the firearm that was recovered from Defendant Boland's aunt. (Doc. 104). An appropriate order follows.

                                                                     MALACHY E. MANNION
                                                                     United States District Judge

DATE: November 12, 2024
23-149-04